and Jonathan Pilsner, arguing for the appellee, Katrina M. Kuhn. Good morning. Are both parties ready to proceed? Yes, Your Honor. Jonathan Pilsner? Yes. Yes, Your Honor. All right. Mr. Pilsner, you may proceed. Thank you, Your Honors, and may it please the court. At the end of the day, the Jordan brothers were convicted on nothing more than a few suspect eyewitness identifications. This court, in affirming Derrick's conviction, noted the state offered no physical evidence connecting him with the crime. At the original trial, we heard about Calvin Stewart. We heard his nickname was Bo Peep, and that he and Derrick may have had some animosity between them, possibly over a girl. But we didn't hear from Calvin Stewart because, as he testified to later in the post-conviction proceedings, he didn't want to be found. When we finally did hear from him, the target of the shooting, and someone with no bias in testifying for the defendant accused of shooting at him, he said unequivocally that Derrick Jordan was not one of the shooters. That wasn't enough for the trial court, which dismissed Stewart's testimony and denied Derrick's petition. Of course, the trial court's decision is entitled to substantial deference here on review. But it dismissed Calvin Stewart's credible testimony simply because he did not come forward sooner. Yet Stewart explained why he did not, and made it rather explicit he would not have cooperated with anyone, even if he had not made himself scarce. And his explanation is not uncommon, nor does it make him uncredible by default. When a court bases its decision not on the evidence, its ruling is arbitrary and unreasonable, and it is manifestly erroneous. By dismissing Stewart's testimony in such a quick manner, with no basis in the record, and then mischaracterizing it, the court's ruling isn't based on any evidence and is just that. In denying the petition, the court first misunderstood Stewart's testimony, saying he testified that he didn't see the shooters, despite the fact that Calvin said he did. Calvin also testified that he had known the Jordans at that point for more than 30 years. He said he had a clear look at who was shooting, but Derrick nor Steven were the shooters. Yet in dismissing Stewart as not credible, the court mischaracterized this testimony, saying, quote, He didn't see who did the shooting. He didn't say he looked at the shooting. He just said he didn't see who did the shooting. But that's not what Stewart testified to. Now, the court did later seem to realize its mistake at the motion to reconsider. But when it was rendering its original ruling and first considering the evidence, it got that evidence wrong. The court also seemed to suggest, and this is the important bit, that Stewart was not credible because he wouldn't have talked to anyone. He had not talked to anyone about the case up until that point. But that doesn't have anything to do with his credibility. And again, the court relied upon an arbitrary and unreasonable conclusion in dismissing Stewart's testimony. Such a blanket ruling would, in essence, make proving an actual innocence claim nearly impossible, since many such claims are based on witnesses coming forward with new testimony long after a trial. Importantly, the court never examined what Stewart's testimony offered to the case as a whole, a direct contradiction which weakened an already close case of identification. This is conclusive evidence materially relevant to Derrick's claim and significantly advances it. If you remember this court, if you go back to the original proceedings, this conviction rests upon three identifications, the identifications from Gregory Warfield, Ronnie Green, and Casey Stewart. But there are problems with each one. Casey Stewart's first identification came three months after the shooting and only after police first asked him about it. He did not volunteer it originally. Ronnie Green also identified Derrick, but had told police that he was simply repeating what Gregory Warfield told him, a common theme in this case since many of the other identifications at trial traced back to Mr. Warfield. And then we have Mr. Warfield himself. He admitted at trial lying to the police about knowing Bo Peep and Papu, Bo Peep being Mr. Stewart in this case, also explaining why Mr. Stewart was what nobody could find Mr. Stewart originally, and then admitted later on that he only thought Teola Jordan was there, but he's already recanted that in Teola's post-conviction proceedings. James Foltz, the other target next to Calvin of this shooting, didn't identify anybody at trial. When we finally did hear from Calvin Stewart, one of the targets of this shooting, if not the principal target, based upon the state's evidence, he categorically denied that Derrick was one of the shooters. Briefly, the court also waived away Jesus Quintanilla's affidavit and Daniel Mata's testimony, because Mata nor Quintilla did not testify. But this was unreasonable because Mata's absence was credibly and easily explained. Post-conviction counsel, excuse me, in both his petition and the extensive 651C certificates, noted he had found Mata but could not interview him or subpoena him during post-conviction proceedings since he was in federal custody in Texas facing federal charges. There was no reasonable way Mata could be called to testify at that hearing. However, his evidence was still admissible, and the court should have properly considered it at the time. Derrick acknowledges that the standard on review is significant, but by waiving away Mr. Stewart's credible testimony simply because he failed to come forward earlier, mischaracterizing it, and failing to take into consideration just how close the evidence in this case was, the court's ruling was arbitrary and unreasonable. It did not base its decision on the evidence, and for that reason, its denial of the petition was manifestly erroneous. Derrick asks this court to reverse and grant his petition and remand this matter for a new trial. And with that, I'm happy to answer any questions, and I thank the court for its time. Thank you, Mr. Pilson. Justice McClaren, your questions? Not really. He's covered the bases. Thank you. Justice Enoch? Just one. In Quintilla's affirmment that defendant was not one of the shooters, we noticed, or I noticed, that really that was contradicted by several, in fact, I think four of the eyewitnesses who identified the defendant as one of the shooters. So even if it was true, how would it have changed the result on retrial? Because the entirety of, and I think, just to make sure that I understand the question clearly, you're referring to Matta's testimony inside of there? Because Quintilla, it's sort of a double hearsay. Matta says that Derrick Jordan was not one of the shooters. The reason this is. Starting Matta, correct. Yeah. Just to make sure that I had it all straight in my head, sorry. It's important evidence because this is a case of a variety of contradicting identifications. There's a lot of, there weren't, at the original trial, there were a few positive identifications of Derrick as the shooter. That was Casey Stewart, Ronnie Green, Gregory Warfield. And there were a number of either no identifications, but there were not any direct negative identifications or straight, you know, it was not him. And so when two people come forward now in a case where we have three people who say, yeah, we think it was him. Although there are questions about that. And we have a variety of other identifications that were basically no identifications or were untrustworthy identifications. To add different, to add negative identifications changes the equation here. And I think that's, that's the difference here. It's different evidence when somebody says it's different. If somebody says, I didn't see who the shooter was. It's a lot more. It's a lot more persuasive when somebody says I saw the shooter and it wasn't them. And that's the difference here. And Casey Stewart, sorry, strike that Calvin Stewart both came in and said, we saw the shooters. It was not them. And that that was never at the original trial. We had some people say it was them. We had some people say we didn't. So, or we couldn't make an identification. Now we have people saying, no, it was not them. And that's, that's, that's, that's why it's so different and why it's so important. Thank you for your answer, counsel. I don't have any other questions. Thank you. The identification by Warfield. What was his motive to falsely identify the defendant? I don't. You didn't have one, did he? None that was established. Well, I, I, I think nothing was nothing was clearly established as far as his motive for lying. He did say that he was, he was affiliated with Calvin Stewart, excuse. And I apologize. Calvin Stewart, Bo Peep and was, was acquainted with them to the point where he admitted lying to the police and was covering for Calvin Stewart. He also was aware of this disagreement between Calvin Stewart and Derek about this girl. And it wasn't, that was not fleshed out terribly well in the original trial proceeding, but it was clear that there was some sort of disagreement between Calvin Stewart and Derek Jordan, possibly over a woman. And that Gregory Warfield was affiliated or friends with Calvin Stewart to the point where he was willing to lie to the police about Calvin Stewart being there. Because Gregory Warfield didn't tell the police that Calvin Stewart and James Fultz, Bo Peep and Papu respectively were on the street. And so, although it wasn't made plain, Mr. Warfield clearly was affiliated more closely with Calvin Stewart, which may motivate, which would, I argue, would motivate the misidentification in this case. The interesting thing, Lee, I, it's also, I think, important to keep in mind that Mr. Warfield's original identification of the three Jordan brothers is already weakened because he has already recanted it for one of the Jordan brothers. I think calling into suspect or calling into question, sorry, his other identifications as well. That's all I have. Thank you. Thank you, Your Honor. Ms. Cohen. Good morning, Your Honor. May it please the court. This court is well aware of the facts in this case. They've already affirmed the convictions of the defendants and his two brothers on direct appeal. Defendant Derek Jordan now claims actual innocence based largely on an exceptionally tardy affidavit of Calvin Stewart, one of the intended victims, and an additional affidavit that provides secondhand allegations a decade after these crimes occurred. Again, the people remind the court that this is not a second stage proceeding where the contents of the affidavits are accepted as true and review is de novo. This is a appeal of a third stage hearing, and this court is reviewing for manifest error. First, I'd like to address the Quintanilla affidavit, which represents, as counsel has recognized, represents double hearsay. You know, at the third stage post-conviction hearing, it's the task of the court, the trial court, to determine the actual facts that it will consider. The trial court can limit the matter in which evidence is presented. There was no reason for the trial court to consider testimony from Mata, who couldn't even appear, and Quintanilla, who also was subpoenaed and did not even appear at the hearing. The trial court was well within its discretion to find that Quintanilla's affidavit was not competent evidence, and the court was not required to accept the affidavit over live testimony. You know, the affidavit left the court with no basis to judge the credibility of Quintanilla, who did not appear, or the credibility of Mata. And I'd like to point out, too, that no witnesses have placed Mata anywhere near the scene, so we really have no corroboration that he was anywhere around there from outside his affidavit. But, again, the court was not required to accept the contents of this affidavit over any live testimony where Quintanilla, at least, would have been subject to cross-examination. And, therefore, the people assert strongly that the contents of the affidavit are irrelevant in this appeal. And as to Calvin Stewart, again, the defendant is pointing to Stewart's self-serving attestations that he only came forward in 2016 because he wasn't able to earlier and he didn't want to earlier. Again, you know, I asked the court to take judicial notice of the Teolia Jordan proceedings, where Stewart was able to provide an affidavit and, you know, attempted to exonerate Teolia Jordan, but did not do so then as to Stephen Jordan, or, excuse me, as to Derek Jordan, even though Stewart stated in 2012 that he saw the faces of the shooters clearly and did not say at that point that Derek Jordan was not one of the shooters. And as to the trial court's determinations here on the record, you know, the trial court here was the finder of fact as to Stewart's motivation. The trial court could, within its discretion, find that Stewart did not have any reasonable basis to not come forward earlier. The court could consider the lapse of time between the shooting and Calvin Stewart's appearance. And, you know, the court was not required to take anything in the affidavit as true or anything that Stewart testified to as true because this was a third stage evidentiary hearing. The trial court, you know, heard the full extent of Calvin Stewart's affidavit. And, you know, the defendant is basically arguing that this court should make a finding that Stewart's affidavit or Stewart's testimony was credible and that that, plus a double hearsay affidavit, should change the course of this case. However, that is not what this court is asked to do at this stage of post-conviction proceedings. You know, contrary to what opposing counsel argued, the issue here is not whether defendant's claim of actual innocence is materially advanced. This is not a first stage proceeding. This is not a second stage proceeding. This is whether this is the full evidentiary hearing and, you know, defendant has had his full day in court. I wanted to just respond quickly to another, you know, another claim by opposing counsel. You know, now, you know, the affidavit of Calvin Stewart at this point is not the game changer that it is purported to be by defendant. It may have been credible if it was presented earlier, but at this stage, at the lapse of time, needs to be taken into consideration. The fact that Calvin Stewart is now saying that Derek Jordan was not one of the shooters at this stage is simply not credible. And the same is true as to the Gregory Warfield claim. You know, he's now claiming that he saw that he knew Teolia was not, he claimed in Teolia Jordan's proceeding that he, that Teolia Jordan was not one of the shooters. However, he made no such claim then as to, as to this defendant. So in conclusion, your honors, this defendant has had a full three stage post conviction proceeding and Calvin Stewart and the purported Potential testimony of Daniel Mata would not would not change the results on a retrial in any fashion. The trial court's finding of Stewart's credibility is not subject to review and the denial of the petition here is reviewed only for manifest error. Accordingly, your honors, the people ask this court to affirm the trial court's judgment and I am available for any questions. Thank you, Justice McLaren, your questions. Justice McLaren, you are on mute. Justice McLaren, you are still on mute. Pause for a moment. I'll, I'll call justice McLaren. Okay. Actually, I don't have any Okay, then I'll let me ask just a couple of questions. Was there any evidence that Calvin came forward. Or made a statement to any persons saying that the defendant was not the shooter or not one of the shooters. You mean prior to his 2016 affidavit. Correct. Anybody else Or his father, anybody else. That's my knowledge. And is the length of time between an offense and the identification a factor to take into consideration and weighing The testimony of an eyewitness I think, I think if it was, if it was a trial. I think it's a different consideration than when it's on a post conviction proceeding. I think here you have other credibility determinations that are folded into it. And, and as I pointed out, I think that, you know, the trial court here could consider The motivation for Stuart to come forward at this stage. You know, if he if he's again I point to the to only a Jordan affidavit. I don't know why, you know, that was in 2012 and he was in prison and he was able to do that. So, you know, his motivation for coming forward at this stage must be must must be weighed in terms of his credibility. Justin declare and I'm back on. Yes. Your questions. I is this case distinguishable from the T Olius Jordan a reversal of the second stage proceeding. Yeah, yes, Your Honor. It is. I mean, first, first and foremost, that was a second stage proceeding. As you point out, that was a proceeding in which, you know, evidence has to be, you know, affidavits, etc. have to be considered as true. There are no credibility determinations at that stage. You know that that that is a clear Distinction here, you know, until we have this court was was simply saying that to only I should get an evidentiary hearing. Well here. Derek Jordan got one and and that is over. He got got his evidentiary hearing also the evidence in terms of to only Jordan was was distinguishable because To only a Jordan actually testified at trial. He provided alibi witnesses and therefore that led this court to say that the evidence as to Julia may may not have been quite so overwhelming. As it was to to the other to The other two brothers who are who are who were who were tried with to Leah. So that is, that is, that is how to only a Jordan is distinguishable In Mr. Warfield also recant. Am I correct Mr. Warfield recanted. However, you know, his, you know, the most, you know, the most reliable testimony or the most reliable identifications are those that are made immediately recantations are regarded as unreliable. Also, we have in this case, Ronnie Green Who testified that he was within 10 to 15 feet away from the defendant and identified the defendant in broad daylight. Those would be distinguishable Well, what I'm saying is, I'm not sure that you responded in a way that I Think, and that was, I thought that Mr. Warfield recanted his testimony and to Leah. Jordan, but didn't do so in this case. I'm sorry. And I didn't, I didn't realize you were talking about to Leah Jordan. Gregory Warfield did provide an affidavit as to to Leah Jordan. However, he didn't, you know, in which he in which he, you know, said that he knew that to Leah was not one of the shooters. However, he didn't, he didn't exonerate either of these defendants in that affidavit. So, you know, why, why didn't he do that, then, um, you know, he, he seemed to be actually Gregory Warfield's affidavit in the to Leah Jordan, you know, supports the people's position that his testimony is his testimony that Derek Jordan was one of the shooters was was accurate. Okay, I have no further questions. Thank you. Thank you. Thank you, Mr. Pillsbury bottle. Yes, Your Honors. Just to clarify something. There's, there's the opposing counsel made a discussion about the lapse between the Calvin Stewart affidavit. I think it's important to keep in mind the lapse and when Mr. Stewart. When Mr. Calvin Stewart gave his affidavit to Teola Jordan and when he filled out the affidavit. In this case, I think it's important to keep in mind the procedural history of this case. The brothers all three brothers were represented by the same attorney, the same private attorney at during the trial proceedings, and also on the original post conviction petition. There was one post conviction petition filed for all three. There was a conflict that developed and then Derek and Stephen Jordan had to get a public defender. Just to kind of highlight that this point because I think it's important that was back in 2011 The public defender then began working on the case. And as we, I think, all know, sometimes these cases, particularly post conviction proceedings. Take a while to develop when you're starting from scratch. And so that I think does explain a lot of the delay because there was not a amended petition, including all of the Affidavits, including Calvin Stewart's until later in this case, which would explain quite a bit of it because private counsel retained or continued working on Teola Jordan's case, which would explain why it had been filed sooner. While new post conviction petition counsel began working on Derek and Stewart or Derek and Stephen's case later on. I think that explains that delay and that kind of I think that cuts some of the state's argument out as to why the delay matters in this case. The other thing that cuts that that's important to keep in mind here is that Calvin Stewart You have to ask what's his what's his motive and testifying. Now he was the target in this case, there were people who were trying to shoot and kill him in this case. So it doesn't make any sense that he would ever come forward unless he really did unless unless he Was trying to tell the truth and exonerate somebody who had actually shot at him, he is He is and Mr. And Derek Jordan had a disagreement between each other. So there's no bias and coming forward here and also Calvin Stewart was in federal custody for the majority of that time. Probably making it very difficult for post conviction counsel to reach him as I believe post conviction counsel mentioned a few times in his Significant and sizable rule 651 C affidavits. So as far as when we're talking about does the delay in time make him incredible almost as default as the trial court held in this case. It's part of the analysis. But in this case, when you look at the fact that there was a change in counsel, there were proceedings going on and Calvin Stewart still came through and testified. It doesn't make him I guess de facto incredible, which is what the trial court seemingly concluded here. Secondly, both in the Calvin Stewart affidavit outside of the identifications. There is nothing that contradicts Calvin Stewart's version of events here, nor Daniel matters version of events. I realized that the state says that because there's no cooperation, we can't get Any credibility to this affidavit, but this affidavit doesn't rebut anything other than the identifications in this case. And that's, that's obviously the one thing that it's trying to rebut because there are questions over the identifications in this case. Lastly, I do want to get and I highlighted this on my opening statement, but While Gregory Warfield did recant his identification of Teola and said nothing as far as Derek or Steven, the fact that Mr. Warfield already has recanted one of the three identifications Should call into question the other two. So when the court take judicial notices judicial notice of tools proceedings, it should keep that in mind as well. And with that, if there are any other questions, I'm happy to answer them. Thank you, Mr. Justice McLaren your questions. Yes. Counsel, you make these arguments that are sound empirical to me. And that is, is that The witness wouldn't be doing certain things and You wouldn't be testifying unless it were true and so on. And Unfortunately, In my Experience as a judge over 30 some years I've run into situations where there's a code of silence, so to speak, between felons who exchange rounds and I'm not saying it happened in this case, but You haven't established that Under the circumstances that The alleged Psyche or psychology of what this witness was was Acting under has been clearly established and you're making this argument in order to establish that the trial courts ruling was not credible. And there's nothing in the record that I'm aware of that establishes or supports or corroborates a logic of your argument. Is there any that you're aware of I'm I want to the pause in the questions. I want to make sure that I answer it. There were there were a few different elements inside of your question. I want to make sure that I'm answering correctly. So if I'm if I'm drifting off. Please correct me, but I think that By focusing like the, the idea of this code of silence between felons or of the like I don't think there's enough evidence to sort of highlight that here. I don't to draw that conclusion. I think there would need to be something else inside of the record that they really truly did have some sort of ongoing, you know, That there that there would be some something that would give rise to that. I don't think that I the record doesn't bear that out if that becomes part of the credibility analysis. I think that it has to be rooted somewhere in the record. I know the fact that they had a disagreement. I don't think is enough to say that, you know, Mr. Stewart would come in and lie simply as like honor among thieves, because there's no there's I just, I think that that there would have to be something in the record, one way or the other. And I don't see that I would argue there is nothing in the record that would lead to that conclusion outside of conjecture. Um, you know, Yeah, I did this. Does that I may be misunderstanding your question. And I apologize. 115 10 Was enacted. In part because of problems with witnesses who did not wish to testify or recanted prior to trial in so far as original statements made to authorities and The public policy, if you will, of those kinds of laws suggest that there is a phenomena and it is in the nature of people, especially people who know one another. Are more willing to not identify witnesses on the basis that they don't want them to go away. They may either forgive and forget, or they may actually attempt revenge. So that's their, their case law and their statutes on the books that relate to witnesses who don't really want to cooperate for whatever their own personal reasons. And I believe you're referring to the turncoat of the hearsay that the turncoat evidence hearsay. Exception and I and I and I acknowledge that that's that's an issue, but I think, I think we're reaching way too far afield. If we start to pull that in from From from this record I and I acknowledge that that's a phenomenon that the legislature has acknowledged and I I obviously have cases in which that has been that has been at issue. This isn't that this isn't that case, though, because there we don't have, you know, We don't have Mr. Stewart, you know, recanting anything if there had been a if there had been an initial identification and a recanting, then I think perhaps the logic of something behind a 115 10.1 might come into play here, but we don't have that here and I think I think your conclusion, I would argue is is too speculative as to his credibility. For it to for. Yeah, I think that that conclusion is just too speculative in this key in this case to say that this is more akin to a turncoat Or, like I said, the honor among thieves don't talk or, you know, do something like that Calvin Stewart didn't Calvin Stewart could have just simply stayed away and not said anything. The fact that he was willing to come forward, fill out an affidavit and then go into court. And and take taken. Oh, and I realized that the argument is that, you know, always don't mean anything to folks like this. But if this didn't mean something to him. I don't think he would have taken the steps to constantly show up when he needed to to present his version of events. The statute of limitations run on Calvin in so far as his illegal use of a firearm. I don't think there was any allegation of any illegality for Mr. Stewart in this case. Okay, assuming that there was an assuming that the motive for him not coming forward. Would have been because if there was testimony that he had fired upon His attackers that he as a convicted felon would also be liable under the law. Liable in what manner. I apologize. I was being prosecuted as a convicted felon in possession of a weapon and possibly aggravated possession because he discharged it in the direction of someone If that had been the case, but there was no I don't believe there was any evidence that the that Mr. Stewart or Mr. Fultz the targets. Ever attempted or discharge. There were a number of other witnesses that even if they didn't make the identifications. No, I don't believe there was any other evidence from any of the other witnesses that Mr. Stewart, the person who later was determined to be Mr. Calvin Stewart and Mr. Fultz had weapons or had fired at all or had any indication it Mr. Fultz and Mr. Stewart both testified. Well, let me tell you about Mr. Fultz at trial and then Mr. Stewart at post conviction hearings both testified that when the shooting began, they both ran And I believe that was backed up by every other witness, including the ones that didn't have any active interest in this case. So there wouldn't have been any any any I think Criminal liability for Mr. Calvin Stewart from this incident. It turns out, I believe that he may have had some other federal issues. And that was one of the reasons why he was trying to avoid police, but that's not clear in the record either. Thank you. I have no further questions. Justice, you know, I don't have any questions. All right. And neither do I. Mr. Pilsner. Thank you. The court thanks both parties for the quality of your arguments today. The case will be taken under advisement and a written decision will be issued in due course. I'll initiate the call. Thank you. Thank you. Thank you.